UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

NORTH AMERICAN RUBBER
THREAD CO., INC.
         Debtor

Chapter 7
Case No. 03-16508-WCH

MEMORANDUM OF DECISION

I. **Introduction**

      The matter before the Court is Asiafila Company Ltd.'s Motion for Summary Judgment on World Flex's Objection to Asiafila's Notice of Transfer of Claim (the "Motion"). In the Motion, Asiafila Company Ltd. ("Asiafila") contends that because it paid the unsecured claim held by World Flex Public Company, Ltd. ("World Flex") against North American Rubber Thread Co. (the "Debtor") in the above-captioned case, it has acquired the World Flex claim under the doctrine of equitable subrogation. In its objection, World Flex asserted that the various agreements that govern their mutual obligations contain no provision for subrogation. For reasons stated below, I hold that Asiafila is not subrogated to the World Flex claim against the Debtor and will enter an order denying the Motion.

II. **Facts**

      The Debtor filed for relief under Chapter 7 on August 4, 2003. On August 13, 2003, the Debtor's principal secured creditor, Fleet National Bank ("Fleet"), filed a motion for relief from stay to sell its collateral, which comprised all of the Debtor's assets. I granted the motion on August 21, 2003. Fleet then sold the Debtor's assets at a private auction to World Flex, a rubber thread producer incorporated in Thailand, for $1,500,000. World Flex had been a supplier of the

Debtor and filed two general unsecured claims totaling $812,836.73, representing unpaid pre-petition shipments of inventory to the Debtor (the "Claim").[1]

Following its purchase of the Debtor's assets, World Flex entered into negotiations with Asiafila Company Ltd. ("Asiafila"), another Thai rubber thread company, to sell the Debtor's assets.[2] The fruits of these negotiations were a memorandum of understanding entered into on October 1, 2003 (the "Memorandum"), an asset purchase agreement entered into on November 17, 2003(the "Asset Agreement"), and an option to repurchase shares agreement entered into on November 17, 2003 (the "Option Agreement," and together, the "Agreements"), which effectuated the transfer of the Debtor's assets from World Flex to Asiafila.[3] In relevant part, the Memorandum states that

> Immediately upon the purchase by World Flex of 100% of the assets of North American Rubber Thread Co., Inc., from Fleet National Bank, Inc., purchase those same assets from World Flex for the sum of US$2,000,000, plus $60,000 expenses, plus $ 62,000 for captured inventory. [Line Break] Simultaneously, enter agreement to re-purchase from World Flex 3,150,000 shares of common stock in Asiafila for the sum of US$750,000 plus interest, or at book value, at [World Flex's] option, within two years.

The memorandum of understanding also contains an integration clause which provides that it "constitutes the full agreement to be executed between Asiafila Company Ltd. And World Flex Public Company, Ltd."[4] The Asset Agreement provides for the transfer of the Debtor's assets to

---

[1] Claim No. 12; Claim No. 49; Friar Aff., at 1-2. It is unclear why World Flex filed two unsecured claims, but the amount of the undisputed World Flex claim is $812,836.73.

[2] Friar Aff. at 5.

[3] *Id.* at 2-5.

[4] Memorandum, at 2.

2

Asiafila in return for $2,122,000.00.[5] The Option Agreement gives Asiafila the option to repurchase 3,150,000 shares of Asiafila stock held by World Flex for the sum of $750,000 within 2 years of the agreement.[6]

On May 26, 2005, Asiafila filed a Notice of Transfer of Claim (the "Notice"), giving notice of the transfer by subrogation of the Claim to Asiafila.[7] On June 3, 2005, World Flex filed an Objection to Notice of Transfer of Claim (the "Objection").[8] At a June 29, 2005, hearing on the Objection I issued an order stating "alleged transferee to file motion for summary judgment within one month and the response three weeks thereafter."[9] Asiafila filed the Motion on July 28, 2005, and World Flex filed its Opposition to Motion for Summary Judgment on World Flex's Objection to Asiafila's Notice of Transfer of Claim (the "Opposition") on August 19, 2005. On September 7, 2005, I heard oral arguments on the Motion and the Opposition.

Asiafila made factual allegations in its memorandum in support of the Motion for Summary Judgment and its allegations are supported by the Affidavit of John Friar (the "Friar Affidavit"), a World Flex executive and a participant in the negotiations between Asiafila and World Flex. According to Asiafila, World Flex blames one of Asiafila's founders, who was

---

[5]Asset Agreement; Friar Aff. Ex. A.

[6]Option Agreement; Friar Aff. Ex. B. Although the Option Agreement characterizes the repurchase as optional, the Memorandum states that the $750,000 is mandatory, "to be paid within . . . 2 years at par plus w'Flex interest or Book Value, at [World Flex's] option," and characterizes the $750,000 as a "balance due." Memorandum, 2.

[7]Notice of Transfer of Claim, Docket No. 104.

[8]Objection to Notice of Transfer of Claim, Docket No. 106.

[9]*See* Court's Order of June 29, 2005, Docket No. 112.

3

formerly World Flex's managing director, for extending the credit to the Debtor that accounts for World Flex's unsecured claim.[10] Asiafila contends that World Flex demanded that Asiafila pay the amount of the Claim as part of the deal to acquire the Debtor's assets, and states that Asiafila was willing to pay in the interest of maintaining a good business relationship with World Flex.[11] Asiafila also claims that the parties saw no need to memorialize the payment of the Claim because they believed the Debtor's bankruptcy would pay no dividend to unsecured creditors, an assumption now proven incorrect.[12] Indeed, the only language in the Agreements that remotely suggests payment by Asiafila of any part of the World Flex claim is the allocation of $62,000 of the asset purchase price to "captured inventory" in the Memorandum.[13] This language is not found in the Asset Agreement, and, according to Asiafila, represents a part of the Claim, as World Flex's extension of credit to the Debtor was to facilitate its purchase of inventory from World Flex.

World Flex did not explicitly deny, in either the Opposition or at the September 7, 2005 hearing, that the excess payment was made to satisfy the Claim against the Debtor, choosing instead to point out that the Agreements themselves make no mention of the Claim.[14]

---

[10] Friar Aff. 2-3.

[11] *Id.* at 3.

[12] *Id.* at 5.

[13] Memorandum at 2. According to Asiafila, the debt owed to World Flex by the Debtor is for unpaid shipments of inventory. Friar Aff. at 2.

[14] Opposition.

III. **Analysis**

A. Legal Standard Applied to a Motion for Summary Judgment

Fed. R. Bankr. P. 7056, which incorporates Fed. R. Civ. P. 56, governs motions for summary judgment. Fed. R. Civ. P. 56(c) states that if "there is no genuine issue as to any material fact . . . that the moving party is entitled to a judgment as a matter of law." The burden of establishing that there is no genuine issue as to any material fact is on the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Initially, the burden of production rests on the movant, and if satisfied then shifts to the nonmoving party. *Id*. The burden of persuasion always remains on the moving party, *id*., although ". . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing there is no genuine issue for trial." Fed. R. Civ. P. 56(e). *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985).

B. World Flex's Compliance with the Court's June 29, 2005 Order

At the June 29, 2005, hearing on this matter I ordered the "alleged transferee to file motion for summary judgment within one month and the response three weeks thereafter."[15] Asiafila filed the Motion on July 28, 2005, and World Flex filed the Opposition on August 19, 2005. In oral arguments on the Motion, Asiafila argued that World Flex's filing did not comply with the court's order. Although August 19, 2005 is three weeks and one day after the date on which Asiafila filed its motion, it is one month and three weeks after the date of the Court's order. As the order can be read to require the filing of a response by either August 18th or August 19th, I will not punish World Flex for reading my order liberally. I also note that neither Asiafila

---

[15]*See* Court's Order of June 29, 2005, Docket No. 112.

5

nor any other interested party was prejudiced by World Flex's decision to wait until August 19th to file its Opposition.

### C. World Flex's Compliance with M.L.R.B. 7056-1

M.L.R.B. 7056-1 adopts District Court Local Rule 56.1, which states in relevant part that

> Oppositions to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. . . . Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

Asiafila's memorandum in support of its Motion includes a four-page statement of facts, supported by the Agreements and the Friar Affidavit. World Flex's Opposition includes no specific rebuttals of any of the facts alleged by Asiafila. World Flex does point out apparent inconsistencies in the Friar Affidavit, but none of these inconsistencies contradict any of the facts alleged in the Motion. In oral arguments on the Motion, Asiafila argued that World Flex's Opposition failed to bring forth any new evidence for the Court to consider in determining if a genuine issue of material fact does indeed exist.

Asiafila is correct on both points. World Flex has failed to show that a genuine issue of material fact exists, and further is deemed to have admitted the allegations set forth in Asiafila's Motion for Summary Judgment. Although there may be no genuine issue of material fact, if Asiafila cannot prevail under applicable law, the Motion must fail and World Flex's Objection must be sustained.

### D. Choice of Law

Where no proof of the foreign law is introduced by the parties, a contract made abroad is

analyzed in accordance with Massachusetts law. Parrot v. Mexican Cent. Ry. Co., 207 Mass. 184, 191 (Mass. 1911), Davis v. Cress, 214 Mass. 379, 383 (Mass. 1913). Here, the Agreements state that they are to be governed by the law of the Kingdom of Thailand,[16] but nowhere in the arguments of the parties is Thai law mentioned and no evidence of Thai law has been presented to me. Therefore, I will analyze the Agreements according to the law of Massachusetts.

E. Whether Asiafila Satisfied the World Flex Claim

Before I consider whether Asiafila may be subrogated to the World Flex claim I must address World Flex's argument that the parol evidence rule prevents me from considering Asiafila's arguments and the Friar Affidavit. The parol evidence rule prohibits the consideration of extrinsic evidence when examining a contract that is not "ambiguous, uncertain, or equivocal." Ferrari v. Family Mut. Sav. Bank (In re New Era Packaging), 186 B.R. 329, 334 (Bankr. D. Mass. 1995), Boston Car Co v. Acura Auto. Div., American Honda Motor Co., 971 F.2d 811, 815 (1st Cir. 1992), Keating v. Stadium Mgmt. Corp., 508 N.E.2d 121, 123 (Mass. App. Ct. 1987), review denied, 511 N.E.2d 620 (Mass. 1987). "If the parties evidence an intention in the written contract itself that the agreement should be treated as fully integrated, extrinsic evidence may not be considered." Ferrari, 186 B.R. at 334. The Memorandum contains an integration clause, and its terms are neither uncertain, equivocal, or ambiguous, so the parol evidence rule operates to restrict my interpretation of the Agreements to their express terms.

The doctrine of equitable subrogation is available where there is not an express subrogation agreement, Cavaretta v. Greyhound Real Estate Fin. Co., 1995 U.S. Dist. LEXIS 20047 at 23 (D. Mass. 1995), and so does not normally entwine the parol evidence rule in its

---

[16]Asset Purchase Agreement, 4; Option to Repurchase Shares Agreement, 2.

7

workings. Equitable subrogation occurs where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense for its payment. *See, e.g.*, Rinn v. First Union Nat'l Bank of MD, 176 B.R. 401, 407 (D. Md. 1995). In short, equitable subrogation ". . . is the legal effect of payment." Employers Mut. Liability Ins. Co. v. Griffin Contr. Co., 280 S.W.2d 179, 181 (Ky. Ct. App. 1955). Here, subrogation's triggering event – payment by one party of the obligation of another – cannot be proven by looking only at the Agreements, because nowhere in the Agreements does it state that the World Flex claim is being transferred or paid. For Asiafila to prevail it would be necessary for me to look outside of the four corners of the Agreements to extrinsic evidence, in particular the Friar Affidavit, in order to conclude that Asiafila's payment was made partly in exchange for the World Flex claim. Because the terms and conditions of Asiafila's payment are set out exclusively in the Agreements the parol evidence rule prohibits me from considering any extrinsic evidence, and I cannot find that Asiafila did in fact satisfy the Claim, and so Asiafila is not eligible to be subrogated to it.[17]

IV. Conclusion

For the reasons set forth herein, I will enter an order sustaining World Flex's Objection to Asiafila's Notice and denying Asiafila's Motion.

---

[17] I note that my decision should not be read as supporting or denying the application of state law equitable subrogation doctrines in bankruptcy, an area of law about which there is great disagreement. *See* In re Fiesole Trading Corp, 315 B.R. 198, 203-204 (Bankr. D. Mass. 2004), Photo Mech. Servs. v. E.I. Dupont De Nemours & Co. (In re Photo Mechanical Servs., Inc., Dessein Amerique, Inc., and Photo Mechanix, Inc., 179 B.R. 604, 618-619 (Bankr. D. Minn. 1995).

/s/ William C. Hillman

William C. Hillman
United States Bankruptcy Judge

Dated: 10/20/05